In the Matter of the INTERNATIONAL GOLD BULLION EXCHANGE, INC., a Florida corporation, et al., Debtors.

Earl FAIRCLOTH, Trustee, Plaintiff,

v.

Paromila E. and S. Daman PAUL, and S. Daman Paul, M.D., as Trustee for the S. Daman Paul, M.D. and P. Daman Paul, M.D., Ltd. Pension Plan and Trust, Defendants.

Bankruptcy Nos. 83–00754–BKC–SMW, 83–00755–BKC–SMW and 83–00756–BKC–SMW. Adv. No. 85–0398–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

April 22, 1986.

Stewart P. Chambers, Ft. Lauderdale, Fla., for the Trustee.

Patrick A. Barry, Ft. Lauderdale, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This cause having come on before the Court on March 19, 1986, upon the Complaint of the Trustee to avoid a preferential transfer pursuant to Section 547 of the Bankruptcy Code and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the argument of counsel and being otherwise fully advised in the premises does hereby make the following Findings of Fact and Conclusions of Law.

On April 27, 1983, the International Gold Bullion Exchange, Inc. (the "Debtor"), filed its Petition for Relief pursuant to Chapter 11 of the Bankruptcy Code. The Debtor and the Defendants had previously entered into precious metal purchase contracts [1] as are more fully set forth below:

| CONFIRMATION NO.: | 5211F |
|---|---|
| DATE OF TRANSACTION: | May 26, 1981 |
| PURCHASER: | S. Daman Paul, M.D., as Trustee for the S. Daman Paul, M.D. and P. Daman Paul, M.D., Ltd. Pension Plan and Trust |
| PRECIOUS METALS ORDERED: | 20 one ounce Gold Krugerrands |
| PURCHASE PRICE OF METALS: | $9,340.00 |
| PRECIOUS METALS SHIPPED: | 20 one ounce Gold Krugerrands and 1 complimentary one ounce Gold Krugerrand |
| DATE OF SHIPMENT: | March 8, 1983 |
| FEDERAL EXPRESS AIRBILL NO.: | 765094455 |

----------------------------------

| CONFIRMATION NO.: | 11942F |
|---|---|
| DATE OF TRANSACTION: | November 17, 1981 |
| PURCHASER: | S. Daman Paul, M.D., as Trustee for the S. Daman Paul, M.D. and P. Daman Paul, M.D., Ltd. Pension Plan and Trust |
| PRECIOUS METALS ORDERED: | 10 one hundred ounce Silver Bars and 15 one ounce Gold Krugerrands |
| PURCHASE PRICE OF METALS: | $8,100 for the Silver Bars $5,970 for the Gold Krugerrands |
| PRECIOUS METALS SHIPPED: | 100 ten ounce J M Silver Bars, 15 one ounce Gold Krugerrands, 50 one ounce Silver Rounds and 1 complimentary one-half ounce Gold Krugerrand |

1. Plaintiff and the Defendants agreed that S. Daman Paul, M.D. would appear on behalf of all Defendants both in this action and in the related adversary proceeding captioned *Faircloth v. Arvin Daman Paul,* Case No. 85–0719–BKC–SMW– A, either in his capacity as the husband of Paromila Paul, M.D., the Trustee for the S. Daman Paul, M.D. and P. Daman Paul, M.D., Ltd. Pension Plan and Trust or as the father of Arvin Daman Paul.

| | |
|---|---|
| DATE OF SHIPMENT: | March 18, 1983 |
| FEDERAL EXPRESS AIRBILL NOS.: | 765095181, 765095192 |

---

| | |
|---|---|
| CONFIRMATION NO.: | 16377F |
| DATE OF TRANSACTION: | December 30, 1981 |
| PURCHASERS: | Paromila E. Paul, M.D. and S. Daman Paul, M.D. |
| PRECIOUS METALS ORDERED: | 5 one-hundred ounce Silver Bars, 10 one ounce Gold Krugerrands and 10 one ounce Credit Swiss Platinum Bars |
| PURCHASE PRICE OF METALS: | $3,975 for the Silver Bars<br>$3,930 for the Gold Krugerrands<br>$3,740 for the Platinum Bars |
| DATE OF SHIPMENT: | March 22, 1983 |
| PRECIOUS METALS SHIPPED: | 5 100 ounce Silver Englehard Bars, 10 one ounce Gold Maple Leafs and 10 one ounce Englehard Platinum Bars, together with 25 one ounce Silver Englehard Bars and 1 complimentary one ounce Englehard Platinum |
| FEDERAL EXPRESS AIRBILL NO.: | 765093501 |

---

| | |
|---|---|
| CONFIRMATION NO.: | 18593F |
| DATE OF TRANSACTION: | February 23, 1982 |
| PURCHASERS: | Paromila E. Paul, M.D. and S. Daman Paul, M.D. |
| PRECIOUS METALS ORDERED: | 20 one ounce Gold Krugerrands |
| PURCHASE PRICE OF METALS: | $7,140 |
| DATE OF SHIPMENT: | March 29, 1983 |
| PRECIOUS METALS SHIPPED: | 12 one ounce Englehard Gold Bars, 3 one ounce Credit Swiss Gold Bars, 5 one ounce Mexican Gold Coins, together with 1 complimentary one ounce Gold Maple Leaf |
| FEDERAL EXPRESS AIRBILL NO.: | 765093151 |

---

The Debtor issued to the Defendants Precious Metals Certificates of Ownership evidencing each transaction.

After repeated demands, the Debtor, by Federal Express, delivered to the Defendants, on the dates indicated above, the purchased precious metals, together with additional metals in adjusted satisfaction of the Defendants' precious metals contracts.

■ The Court finds that the Complaint alleges all of the elements required under Section 547 of the Bankruptcy Code. *Matter of Advance Glove Mfg. Co.*, 42 B.R. 489 (Bankr.E.D.Mich.1984); *In re Saco Local Development Corp.*, 30 B.R. 870 (Bankr. D.Me.1983; *In re Satterla*, 15 B.R. 166 (Bankr.W.D.Mich.1981). The Court finds that the Defendants received property of the Debtor in adjusted satisfaction of antecedent debts created on May 26, 1981, November 17, 1981, December 30, 1981, and February 23, 1981, and that the dates of delivery of the precious metals were within ninety (90) days next preceding the filing of the Petition by the Debtor for Chapter 11 protection, as is required under Section 547(b)(4)(A) of the Code. Additionally, the Court finds that the Defendants' receipt of

these precious metals allowed the Defendants to receive more than they would have received had the Debtor filed its Petition under Chapter 7 of the Code (Liquidation) and there had been a distribution to unsecured creditors under said Chapter. The Court further finds that the Debtor was insolvent on the dates of transfer of the precious metals to Defendants, under the presumption of insolvency under Section 547(f) of the Code, which presumption the Defendants left unrebutted.

The Court considered the following Affirmative Defenses, all others either having been abandoned or deemed to be without merit:

(1) The within action by the Trustee is barred under Section 547(c)(1) of the Code as involving contemporaneous transactions for new value;

(2) The within action by the Trustee is barred under Section 547(c)(2) of the Code as involving transactions in the ordinary course of business;

(3) Whether the Debtor's alleged fraudulent practices can be imputed to the Trustee such as to defeat the Trustee's authority to recover preferential transfers under Section 547 of the Code;

(4) There was no transfer of the Debtor's assets by virtue of the existence of a contracts of bailment as between the Debtor and the Defendants as of the dates of issuance of the Certificates of Precious Metals Ownership.

■ The Court finds that the evidence and testimony does not support the Defendants' Affirmative Defenses outlined above. The said transactions do not come within the purview of Section 547(c)(1) of the Code. The Defendants introduced no evidence that the Debtor received anything constituting new value which enhanced the Debtor's estate and which was contemporaneously exchanged for the precious metals shipments on March 8, 18, 22 and 29, 1983. Thus, there existed no contemporaneous exchange for new value which would bar the Trustee's avoidance powers under Section 547 of the Code. Similarly, the Defendants' allegation that the subject trans-

actions were sales in the ordinary course of business and, thus, are excepted under Section 547(c)(2) of the Code is not warranted in light of the fact that the subject precious metal transfers by the Debtor to the Defendants were not within 45 days of any of the contract dates, which dates established the existence of the Debtor's antecedent debts to Defendants.

■ The Court finds that a contract for bailment requires that there be an actual agreement between the parties for a bailment and that, further there be an actual physical delivery of the items to be bailed into the hands of the bailee. *Puritan Insurance Company v. Butler Aviation-Palm Beach, Inc.*, 715 F.2d 502 (11th Cir. 1983); *Blum v. Merrill Stevens Dry Dock Company*, 409 So.2d 192 (3rd DCA 1982); *Rudisill v. Taxi Cabs of Tampa, Inc.*, 147 So.2d 180 (2nd DCA 1962). The Court finds with respect to the precious metals purchased that the evidence does not support the existence of any agreements for bailment and, further, that the Debtor never possessed the precious metals purchased by the Defendants until the dates of transfer of the subject precious metals.

■ The Defendants' further reliance upon the argument that the Debtor's alleged fraudulent practices can be imputed to the Trustee such as to impair or otherwise bar the Trustee's avoidance powers is ill-considered and misplaced. The Defendants are correct when they state that the Debtor's estate is comprised of all legal or equitable interests of the Debtor in property as of the commencement of the case, as is provided for under Section 541(a)(1) of the Bankruptcy Code. Additionally, a Trustee is derivatively entitled to hold for the general unsecured creditors all legal and equitable interests of the Debtor under the provisions of Section 544(a) of the Bankruptcy Code. Under Section 541, a Trustee's rights are derivative from the rights of the Debtor; under Section 544(a), a Trustee's rights are derivative from the rights of creditors. *In re Great Plains Western Ranch Company, Inc.*, 38 B.R. 899 (Bankr.C.D.Cal.1984). Insofar as personal property is concerned, one must look to the state law which controls priority

amongst creditors in order to determine the extent of the Trustee's authority. *4 Collier on Bankruptcy*, Section 541.02 (15th Ed. 1984).

Section 544(a)(1) provides as follows:

The Trustee shall have as of the commencement of the case, and without regard to any knowledge of the Trustee or of any creditor, the rights and powers of, or may avoid any transfers of property of the Debtor or any obligation incurred by the Debtor that is voidable by—
(1) a creditor that extends credit to the Debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such creditor exists.

In pari materia with the foregoing is Section 679.301(1)(b), Fla.Stat., which provides as follows:

(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of:
(b) A person who becomes a lien creditor before the security interest is perfected.

Section 679.301(3), Fla.Stat., lastly, provides:

A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy, or the like and includes an assignee for the benefit of creditors from the time of assignment, and a Trustee in bankruptcy from the date of the filing of the Petition or a receiver in equity from the time of appointment.

It is clear, from the foregoing, that a trustee in bankruptcy is a hypothetical lien creditor, without notice, as to all legal and equitable interests the Debtor had as of the date of the Debtor's filing of its Petition. Moreover, a trustee in bankruptcy takes the foregoing interests on behalf of the general unsecured creditors without imputation of knowledge of the debtors activities or practices which may have been or were in actual or constructive fraud of a particular creditor of the debtor. *In re Investment Sales Diversified, Inc.*, 49 B.R. 837 (Bankr.Minn.1985); *In re Great Plains Western Ranch Company, Inc.*, 38 B.R. 899 (Bankr.C.D.Cal.1984). This is so because a trustee, like a debtor-in-possession, is conceptually separate for purposes of bankruptcy law; indeed, it is well established that even a debtor-in-possession which is, in actuality, the same entity as the debtor is nevertheless deemed to be separate and distinct from the debtor under bankruptcy law, and is armed with Section 544 powers without regard to any notice or knowledge of the Debtor's practices. *In re Great Plains Western Ranch Company, Inc.*, supra, at p. 904.

The Defendants' argument, in light of the foregoing authority establishing the Trustee's powers under Section 544 of the Bankruptcy Code, does not withstand the light of scrutiny and substantively lacks merit. Fraud by the Debtor, in relation to the subject transaction, would have no effect on and would not impair the authority of the Trustee to recover the precious metals under the Trustee's Section 547 avoidance powers by virtue of the fact that the Trustee exercises these derivative powers, together with others, for the benefit and on behalf of the general creditor body, without imputation of knowledge as to any alleged acts of fraud committed by the Debtor. The Trustee herein rightfully seeks to secure for the vast number of creditors who received nothing from this Debtor the precious metals other creditors were able to obtain from the Debtor and which precious metals enabled these limited number of creditors to obtain more than their brethren creditors were able to receive; i.e., the very objective of the Trustee's authority granted him under Section 547 of the Bankruptcy Code.

In sum, the Trustee's hypothetical lien creditor status granted him under Section 544(a) of the Bankruptcy Code remains and should remain unaffected by any alleged fraudulent activities of the Debtor; a fortiori, the Trustee's authority under Section 547 of the Bankruptcy Code to avoid the precious metal transfers by the Debtor to these Defendants should likewise remain unimpaired by the Debtor's alleged fraudulent activities.

The Court concludes that the subject precious metals on the dates they were received by the Defendants were valued as follows:

Value of precious metals received under transaction No. 5211F, as of March 8, 1983, was $8,967.00.

Value of precious metals received under transaction No. 11942F, as of March 18, 1983, was $17,581.30.

Value of precious metals received under transaction No. 16377F, as of March 22, 1983, was $14,118.25.

Value of precious metals received under tranaction No. 18593F, as of March 29, 1983, was $8,652.00.

In summary, the Court finds that the Trustee is entitled to judgment against each of the Defendants for the return of the precious metals each received from the Debtor or, in the alternative, in the event any Defendant should fail to return the precious metals each received, as recited above, within ten (10) days from the date of the Court's Final Judgment rendered herein, the Trustee shall be entitled to a Final Judgment as to each Defendant for the value of said precious metals.